Derek A. Simpson, Calif. State Bar No. 186603
THE LAW OFFICES OF DEREK A. SIMPSON
555 S. Flower St., Ste. 3200
Los Angeles, CA 90071
Telephone: (213) 293-9401
Facsimile: (213) 402-2514
derek@dsimpsonlegal.com

Attorney for Plaintiff,
Fighter's Market, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIGHTER'S MARKET, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPION COURAGE LLC, CHAMPION COURAGE LTD., DEAN THOMPSON, and VOILETTIA GHAWA ANE CURREY, and Does 1 through 100, inclusive,<br><br>Defendants. | No. **'16CV1271 GPC BGS**<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

The factual allegations of this pleading are verified in relevant part by the Declaration of Bruno Munduruca, filed contemporaneously with this Complaint.

**Parties**

1.  Plaintiff Fighter's Market, Inc. ("Fighter's Market") is a California Corporation with its principal place of Business at 7642 Clairemont Mesa Boulevard, San Diego, California 92111.

2.  On information and belief Fighter's Market alleges that defendant Champion Courage LLC is a California limited liability company with its principal place of business at 1221 Brickell Avenue, Suite 1200, Miami, Florida 33131.

1

3.   On information and belief Fighter's Market alleges that defendant Champion Courage Ltd. is a British Virgin Islands limited company with its principal place of business at Suite 513, 1 Science Museum Road, Kowloon, Hong Kong.

4.   On information and belief Fighter's Market alleges that defendant Dean Thompson is a citizen of New Zealand and a resident of Hong Kong.

5.   On information and belief Fighter's Market alleges that defendant Voilettia Ghawa Ane Currey is a citizen of New Zealand and a resident of Hong Kong.

6.   On information and belief Fighter's Market alleges that all defendants ("Defendants") have, at all relevant times, committed the unlawful acts set forth herein, including knowingly and willfully manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and selling counterfeit or infringing KINGZ-brand and MAEDA-brand Brazilian jiu-jitsu gis or otherwise violating Fighter's Market's intellectual property rights in this judicial district.

7.   On information and belief Fighter's Market alleges that defendants Dean Thompson and Voilettia Ghawa Ane Currey are officers, directors, shareholders, or owners of defendants Champion Courage LLC and Champion Courage Ltd. And the unlawful acts, alleged herein, were performed by defendants Dean Thompson and Voilettia Ghawa Ane Currey within the course and scope of such positions. Defendants Dean Thompson and Voilettia Ghawa Ane Currey enriched themselves by fraudulent and illegal conduct as alleged herein, while Fighter's Market suffered enormous financial injury.

8.   On information and belief Fighter's Market alleges that adherence to the fiction of the existence of defendants Dean Thompson and Voilettia Ghawa Ane Currey as separate and distinct from defendants Champion Courage LLC and Champion Courage Ltd would permit an abuse of corporate privilege and would permit an injustice in that defendants Dean Thompson and Voilettia Ghawa Ane Currey would succeed in avoiding legally incurred liability while maintaining the benefits of the corporate status.

9.   On information and belief Fighter's Market alleges that since the time of their creation, now, and at all times relevant to this Complaint such a unity of interest and ownership

2

existed between defendants Dean Thompson and Voilettia Ghawa Ane Currey, on the one hand, and defendants Champion Courage LLC and Champion Courage Ltd, on the other hand, that separate personalities did not and do not in reality exist. Unidentified Does 1-100 are, upon information and belief, individuals and businesses that are acting in concert with or are associated with Defendants' illegal activities, as alleged below.

10. Fighter's Market is presently unaware of the true names of Does 1-100. Fighter's Market will amend this Complaint upon discovery of the identifies of such defendants.

**Jurisdiction and Venue**

11. The causes of action alleged herein arise under Federal statutes regarding trademarks, 15 U.S.C.§ 1051 et seq. (the Lanham Act), so this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

12. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400 because, on information and belief, Defendants conduct business in this district and a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and has caused damage to Fighter's Market in this district.

13. Personal jurisdiction exists over Defendants because, on information and belief, Defendants conduct business in California and in this judicial district or otherwise avail themselves of the privileges and protections of the laws of the State of California such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

**General Allegations**

14.   This action involves Defendants manufacturing counterfeit Brazilian jiu-jitsu gis (also known as kimonos) and importing them to and shipping them from the United States. Defendants made gis bearing Fighter's Market's KINGZ and MAEDA registered trademarks, marketed them under these trademarks, imported them into the United States, sold them, and shipped them from the United States.

15.   Brazilian jiu-jitsu (BJJ) is a martial art that developed in Brazil starting in the 1910s and rose to prominence in the United States and outside of Brazil in the early 1990s, when

1   members of the Gracie family competed in several of the first Ultimate Fighting Championship

2   (UFC) events and other mixed-martial arts competitions.

3         16.   BJJ focuses on ground fighting, using holds and chokes to force one's opponents

4   into submission. The emphasis on ground fighting means that BJJ is considered to be within the

5   "grappling" family of martial arts.

6         17.   BJJ participants primarily train and compete wearing a gi (or kimono). This

7   specialty item of apparel consists of a jacket and pants. The jacket is made of heavy cotton or

8   blended fabric with a thick collar, which is primarily for use by one's opponent to control or

9   choke the wearer of the jacket. The pants are made of lighter-weight cotton or blended fabric,

10   with a drawstring closure.

11         **Fighter's Market's U.S. Trademark Registration for KINGZ, in standard**

12         **characters**

13         18.   Fighter's Market, since November 29, 2011, has used the KINGZ trademark in

14   connection with Brazilian jiu-jitsu gis and other jiu-jitsu-related apparel.

15         19.   On its website and other locations, Fighter's Market, uses KINGZ in connection

16   with its KINGZ-brand gis.

17         20.   Fighter's Market causes its KINGZ-brand gis to be made with the gi jackets

18   displaying KINGZ on collar tags, on shoulder patches, and at other locations where trademarks

19   typically appear on gis.

20         21.   Fighter's Market is the owner of a registration from the U.S. Patent and Trademark

21   Office for KINGZ, in standard characters, for "Brazilian jiu-jitsu gis; cloth belts to be worn with

22   gis." ("Standard Character KINGZ Mark.") This registration was based on a use-in-commerce

23   application filed on June 13, 2013 and the mark was registered on the Principal Register on

24   August 26, 2014. Since then and until now the registration has been "live" on the Principal

25   Register. The USPTO assigned this mark Registration No. 4,591,274.

26

27

28

4

**Fighter's Market's U.S. Trademark Registration for KINGZ, in stylized form**

22.   Fighter's Market is the owner of a U.S. registration for KINGZ, in a stylized form (the "Stylized KINGZ Mark"):



The registration is for "Brazilian jiu-jitsu gis and cloth belts to be worn with gis," and was issued on April 22, 2014. The registration indicates that Fighter's Market does not claim any color as a feature of the mark, thus allowing Fighter's Market the exclusive right to display the mark in any colors. This registration is based on a use-in-commerce application filed on June 13, 2013. Since then and until now the registration has been "live" on the Principal Register. The USPTO assigned this mark Registration No. 4,517,311.

23.   Fighter's Market, since November 29, 2011, has used the Stylized KINGZ Mark in connection with Brazilian jiu-jitsu gis (also known as kimonos) and other jiu-jitsu-related apparel.

24.   On its website and in other locations, Fighter's Market, uses the Stylized KINGZ Mark in connection with its KINGZ-brand gis.

25.   Fighter's Market causes its KINGZ-brand gis to be made with the gi jackets displaying the Stylized KINGZ Mark on collar tags, on shoulder patches, and at other locations where trademarks typically appear on gis.

26.   Together, the Standard Character KINGZ Mark and the Stylized KINGZ Mark are referred to as the "Registered KINGZ Marks."

**Fighter's Market's U.S. Trademark Registration for MAEDA, in standard characters**

27.   On July 26, 2013, Fighter's Market's assignors filed an application to register MAEDA, in standard characters, based on an intent to use the mark in connection with "Clothing, namely, Brazilian jiu-jitsu and martial arts gis and kimonos, rash guards, fight shorts, vale tudo shorts, boardshorts, cloth belts for wearing with martial arts gis and kimonos, t-shirts, tank tops, sweat shirts, sweat pants, polo shirts, jackets, beanies, skullcaps, hats, caps, fight

robes, shoes, sandals, pants, warm-up suits, vests." (The "Registered MAEDA Mark.") The United States Patent and Trademark registered the mark to Fighter's Market on June 17, 2014, assigning it Registration No. 4,553,270. Since then the registration has been live. Fighter's Market has continuously used the mark in connection with BJJ gis since January 2, 2014.

28.   On its website, and other locations, Fighter's Market, uses MAEDA in connection with its MAEDA-brand gis.

29.   Fighter's Market causes its MAEDA-brand gis to be made with the gi jackets displaying MAEDA on collar tags, on shoulders patches, and at other locations where trademarks typically appear on gis.

30.   Collectively, the Registered KINGZ Marks and the Registered MAEDA Mark are referred to as the "Registered Marks."

**Fighter's Market's Unregistered Geometric Crown Design**

31.   In connection with Fighter's Market's KINGZ-brand gis, it uses the following unregistered design mark:



32.    Fighter's Market, since November 29, 2011, has used the Crown Design Mark in connection with Brazilian jiu-jitsu gis (also known as kimonos) and other jiu-jitsu-related apparel.

33.   Fighter's Market is the author of this design and owns all copyrights associated with this design.

34.   On its website, and other locations, Fighter's Market, uses the Crown Design Mark in connection with its KINGZ-brand gis.

6

35.    Fighter's Market causes its KINGZ-brand gis to be made with the gi jackets displaying the Crown Design Mark on collar tags, on shoulder patches, and at other locations were trademarks typically appear on gis.

36.    Collectively, the Registered Marks and the Crown Design Mark are referred to as the "Marks."

37.    The gis and other apparel that Fighter's Market causes to be manufactured displaying the Marks are referred to as the "Authentic Products."

38.    Fighter's Market has incurred substantial expenses promoting the Marks by displaying them at Brazilian jiu-jitsu competitions it has sponsored over the past five years, on its websites, in advertisements, and on the gis and other apparel worn by elite jiu-jitsu competitors whom Fighter's Market sponsors.

**Defendants' Wrongful and Infringing Conduct**

39.    In or around March 2016, Fighter's Market became apprised that Defendants were offering for sale and selling counterfeit KINGZ-brand and MAEDA-brand gis. Fighter's Market's investigation revealed that Defendants were manufacturing the counterfeit gis in China, shipping them to the United States, warehousing them in Poway, California, and then shipping them to a buyer from the Poway, California warehouse.

40.    Fighter's Market's investigation revealed that defendants Dean Thompson and Voilettia Ghawa Ane Currey were the buyer's and middlemen's main contact for the transactions involving the sale of the counterfeit goods.

41.    Fighter's Market has confirmed that the counterfeit goods are illegitimate, black-market goods and infringe on Fighter's Market's KINGZ and MAEDA trademarks ("Counterfeit Products").

42.    Defendants have infringed on Fighter's Market's Marks by manufacturing exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Counterfeit Products that prominently display Fighter's Market's Marks.

43.    Defendants are not, nor have they ever been, authorized distributors or licensees of the Marks. Fighter's Market has never consented to Defendants' use of the Marks, nor has

7

Fighter's Market consented to Defendants' use of any identical or confusingly similar marks. Fighter's Market has never authorized Defendants to manufacture or import, any of its Authentic Products or products bearing its Mark.

44. By the Defendants' dealings in the Counterfeit Products (including, but not limited to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling them) as alleged herein, Defendants have violated Fighter's Market's exclusive rights in and to its Marks and have used literal elements, images and/or designs that are identical to, confusingly similar to, and constitute counterfeiting and/or infringement of Fighter's Market's Marks, to confuse consumers and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct and use began long after Fighter's Market's adoption and use of its Marks.

45. Prior to and contemporaneous with their unlawful actions alleged herein, Defendants had knowledge of Fighter's Market's ownership and/or exclusive license of its Marks and of the strength of Fighter's Market's Marks and the incalculable goodwill associated therewith, and in bad faith adopted Fighter's Market's Marks.

46. Defendants' illegal counterfeiting and infringing actions, alleged herein, will cause confusion, mistake, and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Counterfeit Products, and cause consumers to erroneously believe that such Counterfeit Products are licensed by, or otherwise associated with Fighter's Market, thereby irreparably damaging Fighter's Market.

47. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Fighter's Market: counterfeited Fighter's Market's gis bearing the Marks; infringed Fighter's Market's Marks; committed unfair competition; and unfairly and unjustly profited from such activities at Fighter's Market's expense.

48. Unless enjoined, Defendants will continue to cause irreparable harm to Fighter's Market.

**Count One — Counterfeiting, 15 U.S.C. §§ 1114(1)(a), 1116(d), and 1117(b)-(c)**

49.    Fighter's Market repeats and re-alleges each of the foregoing paragraphs.

50.    Fighter's Market never gave permission to Defendants to use the Registered Marks in connection with BJJ gis.

51.    Defendants used trademarks in connection with BJJ gis that are identical or substantially indistinguishable from the Registered Marks. Defendants used such marks on BJJ gis, which are identical to the goods covered by Fighter's Market's Registered KINGZ Marks and Registered MAEDA Mark.

52.    Defendants used trademarks in connection with BJJ gis that are identical or substantially indistinguishable from the Registered Marks in the sale, offering for sale, distribution, or marketing of counterfeit BJJ gis.

53.    Defendants' actions constitute willful counterfeiting of Fighter's Market's Registered Marks, in violation of 15 U.S.C. §§ 1114(1)(a), 1116(d), and 1117(b)-(c).

54.    As a direct and proximate result of Defendants' actions alleged herein, Defendants have caused substantial and irreparable injury and damage to Fighter's Market and its valuable marks for which Fighter's Market has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Fighter's Market and its valuable marks in an amount as yet unknown, but to be determined at trial.

55.    Defendants' conduct was willful and deliberate.

56.    At the time of the counterfeiting activity, Defendants knew that the gis they caused to be sold, offered for sale, imported, distributed, exported, or marketed using the KINGZ and MAEDA trademarks were counterfeits.

57.    Defendants were unjustly enriched or an award of Defendants' profits is necessary to deter future illegal conduct.

**Count Two — Infringement of Registered Trademarks, 15 U.S.C. § 1114**

58.    Fighter's Market repeats and re-alleges each of the foregoing paragraphs.

59. After Fighter's Market started using its Registered Marks in connection with BJJ gis, Defendants used KINGZ and MAEDA trademarks in connection with the manufacture, importation, marketing, sale, and distribution of BJJ gis.

60. Specifically, Defendants caused the manufacture, importation, marketing, sale, and distribution of BJJ gis displaying KINGZ, in a stylized manner substantially identical to Fighter's Market's registered Stylized KINGZ Mark, in the locations where BJJ gis typically display trademarks. And Defendants used, in connection with the marketing and sale of BJJ gis, KINGZ, in standard characters.

61. Defendants caused the manufacture, importation, marketing, sale, and distribution of BJJ gis displaying MAEDA in the locations where BJJ gis typically display trademarks. And Defendants used, in connection with the marketing and sale of BJJ gis, MAEDA, in standard characters.

62. Fighter's Market, in no manner, gave Defendants permission for the Registered Marks to be used by Defendants in connection with BJJ gis.

63. The registered Standard Character KINGZ Mark and the Registered MAEDA Mark, which afford Fighter's Market the exclusive right to display KINGZ and MAEDA in any font or configuration, entirely cover the manner in which Defendants displayed KINGZ and MAEDA on their counterfeit BJJ gis.

64. And the registered Stylized KINGZ Mark is substantially identical to the stylized KINGZ mark Defendants displayed on their Counterfeit Products.

65. Defendants actions as described were done willfully and in bad faith.

66. On information and belief, Fighter's Market alleges that Defendants, at all material times, were aware of Fighter's Market's prior use of its Registered Marks in connection with gis and Fighter's Markets' registrations for the Registered Marks.

67. By manufacturing, importing, marketing, selling, and distributing the Counterfeit Products, Defendants have caused a likelihood of confusion between their Counterfeit Products and Fighter's Market's Authentic Products.

10

68.   Defendants' continued, knowing, and intentional use of Fighter's Market's Registered Marks without Fighter's Market's consent or authorization constitutes intentional infringement of Fighter's Market's federally registered marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

69.   As a direct and proximate result of Defendants' unlawful and infringing actions as alleged herein, Fighter's Market has suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the marks and the goodwill associated therewith, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause substantial and irreparable injury, loss and damage to Fighter's Market and its rights in and to the marks and the goodwill associated therewith.

70.   Based on such conduct, Fighter's Market is entitled to injunctive relief, damages that Fighter's Market has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

**Count Three — False Designation of Origin, Passing Off &**

**Unfair Competition, 15 U.S.C. § 1125(a)**

71.   Fighter's Market repeats and re-alleges each of the foregoing paragraphs.

72.   Fighter's Market, as the owner and/or exclusive licensee of all common law right, title, and interest in and to the KINGZ and MAEDA Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

73.   Fighter's Market's Marks are inherently distinctive and/or have acquired distinctiveness.

74.   Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to and used marks that are identical or confusingly similar to and constitute reproductions of Fighter's Market's Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and

11

representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake, and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Authentic Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved endorsed, or licensed by Fighter's Markets, and/or that Defendants are affiliated, connected, or associated with Fighter's Market, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with and the consumer recognition of Fighter's Market's Marks, to Defendants' substantial profit in blatant disregard of Fighter's Market's rights.

75.    By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export, and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, that are identical to, confusingly similar to or which constitute colorable imitations of Fighter's Market's Authentic Products, Defendants have traded off the extensive goodwill of Fighter's Market and its Authentic Products to induce and did induce, and intends and will continue to induce customers to purchase its Counterfeit Products, thereby directly and unfairly competing with Fighter's Market. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Fighter's Market, which it has amassed through its worldwide marketing, advertising, sales, and consumer recognition.

76.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute a reproduction of Fighter's Market's Marks would cause confusion, mistake, or deception among purchasers, users and the public.

77.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive

1  the purchasing public and with the intent to trade on the goodwill and reputation of Fighter's

2  Market, its Authentic Products and its Marks.

3      78.   As a direct and proximate result of Defendants' aforementioned actions, Defendants

4  have caused irreparable injury to Fighter's Market by depriving Fighter's Market of sales of its

5  Authentic Products and by depriving Fighter's Market of the value of its Marks as a commercial

6  asset, for which it has no adequate remedy at law, and unless immediately restrained, Defendants

7  will continue to cause substantial and irreparable injury to Fighter's Market and the goodwill and

8  reputation associated with the value of Fighter's Market's Marks in an amount as yet unknown,

9  but to be determined at trial.

10      79.   Based on Defendants' wrongful conduct, Fighter's Market is entitled to injunctive

11  relief as well as monetary damages and other remedies as provided by the Lanham Act, including

12  damages that Fighter's Market has sustained and will sustain as a result of Defendants' unlawful

13  and infringing actions as alleged herein, and all gains, profits and advantages obtained by

14  Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees

15  and costs.

16               **Count Four — Common Law Trademark Infringement**

17      80.   Fighter's Market repeats and re-alleges each of the foregoing paragraphs.

18      81.   Defendants' acts complained of herein constitute trademark infringement under

19  California common law. Defendants' acts complained of herein are willful and deliberate and

20  committed with knowledge that Defendants' unauthorized use of the Fighter's Market Marks

21  causes a likelihood of confusion.

22      82.   Fighter's Market is informed and believes, and thereon alleges, that Defendants

23  have derived and received and will continue to derive and receive, gains, profits and advantages

24  from Defendants' trademark infringement in an amount that is not presently known to Fighter's

25  Market.

26      83.   By reason of Defendants' wrongful acts as alleged in this Complaint, Fighter's

27  Market has been damaged and is entitled to monetary relief in an amount to be determined at

28  trial.

13

84.   Due to Defendants' trademark infringement, Fighter's Market has suffered and continues to suffer great and irreparable injury for which Fighter's Market has no adequate remedy at law. Defendants' willful acts of trademark infringement under California common law constitute fraud, oppression, and malice. Accordingly, Fighter's Market is entitled to exemplary damages.

### Count Five — Violation of California Unfair Competition Law

85.   Fighter's Market repeats and re-alleges each of the foregoing paragraphs.

86.   This is a claim for unfair competition, arising under California Business & Professions Code § 17200, et seq. and California common law.

87.   Defendants' acts of counterfeiting, trademark infringement, and false designation of origin complained of herein constitute unfair competition with Fighter's Market under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200 et seq.

88.   Fighter's Market is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendants' unfair competition in an amount that is not presently known to Fighter's Market.

89.   By reason of Defendants' wrongful acts as alleged in this Complaint, Fighter's Market has been damaged and is entitled to monetary relief in an amount to be determined at trial.

90.   By its actions, Defendants have injured and violated the rights of Fighter's Market and has irreparably injured Fighter's Market, and such irreparable injury will continue unless Defendants are enjoined by this Court.

### Prayer for Damages and Relief

Wherefore, Fighter's Market prays for judgment against Defendants, inclusive, and each of them, as follows:

1.   For an award of Defendants' profits and Fighter's Market's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble

14

damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a).

2.     In the alternative to Defendants' profits and Fighter's Market's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15  U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Fighter's Market may elect prior to the rendering of final judgment.

3.     For an award of Defendants' profits and Fighter's Market's damages in an amount to be proven at trial for willful trademark infringement of its federally registered Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3).

4.     For an award of Defendants' profits and Fighter's Market's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3) for false designation of origin and unfair competition under 15 U.S.C. §1125(a).

5.     For an award of damages to be proven at trial for common law trademark infringement.

6.     For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

a.     manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

b.   directly or indirectly infringing in any manner any of Fighter's Market's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Fighter's Market's Marks;

c.   using any reproduction, counterfeit, copy or colorable imitation of Fighter's Market's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Fighter's Market's Marks to identify any goods or services not authorized by Fighter's Market;

d.   using any of Fighter's Market's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Fighter's Market's Marks, or any other marks that are confusingly or substantially similar to Fighter's Market's Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products.

e.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Fighter's Market, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Fighter's Market.

f.   engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

g.   engaging in any other actions that constitute unfair competition with Fighter's Market;

h.   engaging in any other act in derogation of Fighter's Market's rights;

i.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

j.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

k.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs above; and

7.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Fighter's Market for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Fighter's Market's trademarks, copyrights or other exclusive rights including, without limitation Fighter's Market's Marks, or bear any marks that are confusingly similar to Fighter's Market's Marks;

8.   For an order of the court requiring that Defendants deliver up for destruction to Fighter's Market any and all infringing and/or counterfeit gis and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Fighter's Market's trademarks, copyrights or other exclusive rights including, without limitation Fighter's Market's Marks, or bear any marks that are confusingly similar to Fighter's Market's Marks pursuant to 15 U.S.C. § 1118.

9.   For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing,

17

1  displaying, retailing, offering for sale, sale and/or otherwise dealing in the infringing and/or

2  Counterfeit Products as described herein, including prejudgment interest.

3      10.   For an order from the Court that an asset freeze or constructive trust be imposed

4  over any and all monies, profits, gains and advantages in Defendants' possession that rightfully

5  belong to Fighter's Market;

6      11.   For an award of exemplary or punitive damages in an amount to be determined by

7  the Court;

8      12.   For Fighter's Market's reasonable attorneys' fees;

9      13.   For all costs of suit; and

10  For such other and further relief as the Court may deem just and equitable.

11

12                        DEMAND FOR JURY TRIAL

13  Fighter's Market respectfully demands a trial by jury on all claims.

14

15  Dated:  May 26, 2016

16                          THE LAW OFFICES OF DEREK A. SIMPSON

17                   By:      s/ Derek A. Simpson

18                          Derek A. Simpson
                            Attorney for Plaintiff, Fighter's Market, Inc.
19                          derek@dsimpsonlegal.com

20

21

22

23

24

25

26

27

28

**Verification**

I, Bruno Lapenda Lins Munduruca, declare as follows:

1.   I am the Chief Executive Officer and President of Fighter's Market, Inc.

2.   I have continuously served in these positions since the company was started.

3.   I have personal knowledge of the facts set out in the foregoing *Verified Complaint* and if called on to testify I would competently testify as to the matters stated herein.

4.   I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning Fighter's Market, Inc.'s activities are true and correct, as are the factual statements concerning Fighter's Market.

Executed on May 24, 2016, at San Diego, California.

Bruno Lapenda Lins Munduruca

1