UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIGHTER'S MARKET, INC., a California corporation,<br><br>                          Plaintiff,<br><br>v.<br><br>CHAMPION COURAGE LLC, CHAMPION COURAGE LTD., DEAN THOMPSON, and VOILETTIA GHAWA ANE CURREY, and Does 1 through 100, inclusive,<br><br>                          Defendants. | Case No.: **3:16-cv-01271-GPC-BGS**<br><br>**ORDER DENYING DEFENDANT CHAMPION LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**[ECF No. 11.]** |

Before the Court is Defendant Champion Courage Ltd.'s motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). ECF No. 11. Plaintiff filed an opposition, and Champion Courage Ltd. filed a reply. ECF Nos. 16–17. The Court deems the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Based on the reasoning below, the Court **DENIES** Champion Courage Ltd.'s motion to dismiss for lack of personal jurisdiction.

/ / / /

## PROCEDURAL BACKGROUND

On May 26, 2016, Plaintiff Fighter's Market, Inc. ("Plaintiff" or "Fighter's Market") filed a verified Complaint against Defendants Champion Courage LLC, Champion Courage Ltd., Dean Thompson, Voilettia Ghawa Ane Currey, and Does 1 through 100 inclusive (collectively, "Defendants"). ECF No. 1. The Complaint alleges five causes of action, three of which arise under the Lanham Act and two of which arise under California law: (1) counterfeiting, 15 U.S.C. §§ 1114(1)(a), 1116(d), and 1117(b)-(c); (2) federal trademark infringement, 15 U.S.C. § 1114; (3) false designation of origin, passing off, and unfair competition, 15 U.S.C. § 1125(a); (4) state common law trademark infringement; and (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. *See id.* On July 12, 2016, Defendant Champion Courage Ltd. filed a motion to dismiss for lack of personal jurisdiction. ECF No. 11. An opposition was filed on August 5, 2016. ECF No. 16. A reply was filed on August 19, 2016. ECF No. 17.

## FACTUAL BACKGROUND

Plaintiff Fighter's Market is a California corporation with its principal place of business in San Diego, California. ECF No. 1, Compl. ¶ 1. Defendant Champion Courage Ltd. ("Champion Limited"[1]) is a British Virgin Islands limited company with its principal place of business in Hong Kong. *Id.* ¶ 3. Champion Courage LLC ("Champion Courage") is a California limited liability company with its principal place of business in Florida. *Id.* ¶ 2. Plaintiff alleges that Dean Thompson and Voilettia Ghawa Ane Currey, both citizens of New Zealand and residents of Hong Kong, are officers, directors, and shareholders of Champion Courage and Champion Limited. *Id.* ¶¶ 4–5, 7. Plaintiff also alleges that Champion Courage and Champion Limited are alter egos of Thompson and Currey. *Id.* ¶¶ 8–9.

---

[1] To avoid confusion, Champion Courage LLC will hereinafter be referred to as Champion Courage, and Champion Courage Ltd. will be referred to as Champion Limited.

Plaintiff owns trademarks registered with the U.S. Patent and Trademark Office, including (1) "KINGZ" in standard characters and in stylized form and (2) "MAEDA" in standard characters. *Id.* ¶¶ 21, 22, 27. Plaintiff uses the KINGZ and MAEDA trademarks (collectively, "K/M trademarks") in connection with its KINGZ and MAEDA brands of Brazilian jiu-jitsu "gis" (uniforms) and related apparel, as well as on its website and advertisement materials. *Id.* ¶¶ 18–20, 23–25, 28–29. Plaintiff also uses an unregistered crown-shaped design mark in connection with its KINGZ-brand gis and owns all copyrights associated with this design. *Id.* ¶¶ 31, 33–35.

For several months in 2013, Bruno Munduruca, Chief Executive Officer and President of Fighter's Market, discussed with Dean Thompson, an officer of Champion Limited, the possibility of partnering in the manufacture and sale of gis. ECF No. 16-2, Munduruca Decl. ¶¶ 5, 7; ECF No. 11-2, Currey Decl. ¶ 2. The proposed joint venture ultimately failed to move forward. Munduruca Decl. ¶¶ 5, 7; Currey Decl. ¶¶ 2–3. Munduruca asserts that Plaintiff did not license to Thompson or the other Defendants any of the K/M trademarks during the course of negotiations. Munduruca Decl. ¶6–7. Although Plaintiff never ordered any gis from Defendant and never authorized Defendant to use its trademarks, Thompson informed Munduruca that he had nonetheless set in motion plans to manufacture gis bearing Plaintiff's K/M trademarks. Munduruca Decl. ¶ 7. Voilettia Currey, a director and shareholder of Champion Limited, asserts that Champion Limited was left with an unsold stockpile of K/M gis a result of the unrealized joint venture. Currey Decl. ¶¶ 1, 5.

In April 2014, Champion Limited sued Plaintiff in San Diego Superior Court for contract and tort claims relating to the unrealized joint venture. Munduruca Decl. ¶ 8; Currey Decl. ¶ 3; ECF No. 11-3, Ex. A at 2.[2] On September 2, 2014, the parties settled the case. Munduruca Decl. ¶ 9; Currey Decl. ¶ 4.

---

[2] Citations are based upon CM/ECF pagination.

In September 2015, Currey and Thompson negotiated a contract to sell gis with K/M trademarks to a Hong Kong corporation. Currey Decl. ¶¶ 1, 6. All negotiations took place in Hong Kong. *Id.* Champion Limited and the Hong Kong-based buyer agreed that Champion Limited would first send the gis to a Brazil-based distributor. *Id.* ¶ 7. Currey acknowledges that these gis bore Plaintiff's K/M trademarks and asserts that they were from the same stockpile left over from the parties' unrealized joint venture. *Id.* ¶¶ 3, 5–7.

In or around March 2016, Plaintiff learned that Defendants were manufacturing gis with Plaintiff's K/M trademarks in China and shipping them to a warehouse in Poway, California, from where they were then shipped to Brazil.[3] Compl. ¶ 39; Munduruca Decl. ¶ 10. Plaintiff alleges that Defendants are not and were never authorized distributors or licensees of the K/M trademarks. Compl. ¶ 43. Nor did Plaintiff authorize Defendants to manufacture or import any products bearing the K/M trademarks. *Id.* Plaintiff alleges that Defendants knew that Plaintiff owned the K/M trademarks at all relevant times. *Id.* ¶ 45. Plaintiff alleges that Defendant's infringement has and continues to harm Plaintiff in California by, *inter alia*, diluting Plaintiff's trademarks, reducing Plaintiff's revenue, and diminishing Plaintiff's goodwill. *See, e.g.*, *id.* ¶¶ 44, 46, 69, 74–75, 78.

/ / / /

---

[3] Plaintiff alleges in its verified Complaint and in a declaration by Bruno Munduruca that Champion Limited shipped the K/M gis to a warehouse in Poway, California prior to shipping them to Brazil. Compl. ¶ 39; Munduruca Decl. ¶ 10. Defendant asserts that Champion Limited shipped the gis to a "forwarding service located outside of California." *See* Currey Decl. ¶ 7. Defendant also presents a host of evidentiary objections to Plaintiff's exhibits, *see* ECF No. 18, which Plaintiff attached to establish that Defendant shipped the K/M gis via California, *see* Munduruca Decl. ¶¶ 12 – 20; ECF Nos. 16-3–16-8. Because the court resolves all contested facts in favor of the non-moving party if the parties' affidavits contain conflicting facts, the Court resolves the contested facts in favor of Plaintiff based on the statements in Plaintiff's verified Complaint and Munduruca's declaration. *See In re Western States Wholesale Natural Gas Antitrust Litigation v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

# DISCUSSION

## A. Legal Standard on Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re Western States Wholesale Natural Gas Antitrust Litigation v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (internal citation omitted). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. *In re Western States*, 715 F.3d at 741; *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (if the parties' affidavits contain conflicting facts, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established). At the same time, however, the plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence, "by affidavit or otherwise." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1976) (quoting *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974)). As such, the Court need only consider the requirements of due process. Due process requires that nonresident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction

can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

## B.     General Personal Jurisdiction over Defendant

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). With respect to corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal citation omitted). Outside of these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19. Exceptional circumstances do not exist merely whenever "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is only whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 564 U.S. at 919).

Here, Defendant argues that this Court lacks general personal jurisdiction over it because it lacks contacts with California that are continuous and systematic in nature. *See* ECF No. 11-1 at 8. Defendant is a British Virgin Islands company with no addresses in California, is not licensed to do business in California, does not pay California taxes, and has no agent for service of process or employees in California. *See* Compl. ¶ 3; Currey Decl. ¶ 10. Defendant's principal place of business is in Hong Kong. Compl. ¶ 3.

In response, Plaintiff asserts that the Court has general personal jurisdiction over Defendant by virtue of the fact that Defendant is a jiu-jitsu apparel company and that California is "the center of the jiu-jitsu world." ECF No. 16-1 at 4. Plaintiff states that Defendant sponsors athletes who reside in, teach in, and compete in California and requires sponsored athletes to don Defendant's brand of gis. Munduruca Decl. ¶¶ 23–24.

Plaintiff also asserts that Defendant advertises in a California-based jiu-jitsu magazine and sponsors jiu-jitsu events in California. *Id.* ¶¶ 25–26.

However, such contacts are not so "continuous and systematic" as to establish general personal jurisdiction over Defendant. *See Corcoran v. CVS Health Corp.*, No. 15-CV-3504 YGR, 2016 WL 948880, at *5 (N.D. Cal. Mar. 14, 2016) (concluding there was no general jurisdiction even though CVS Health had a substantial number of pharmacies, maintained two distribution centers, and solicited employees in California); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 2310 (2015) (affirming district court's finding of no general jurisdiction over defendant who had contracts with California companies worth between $225 and $450 million, sent employees to California, and advertised in trade publications with distribution in California); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) (concluding no general jurisdiction with respect to defendant car manufacturer who had 302 employees in California and over one hundred thousand cars registered in California in the past year). Moreover, Plaintiff has not established any exceptional circumstances that would render Defendant, a British Virgin Islands company with its principal place of business in Hong Kong, essentially "at home" in California. Nor do Plaintiff's formulaic assertions that Defendants meet the requirements of alter ego liability, *see* Compl. ¶¶ 8–9, permit the Court to impute the other Defendants' contacts with California to Champion Limited, *see Doe v. Unocal Corp.*, 248 F.3d 915, 926–28 (9th Cir. 2001). Thus, the Court concludes that it lacks general personal jurisdiction over Defendant.

**C.     Specific Personal Jurisdiction over Defendant**

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that

establishes jurisdiction." *Goodyear Dunlop Tires*, 564 U.S. at 919 (internal citation omitted).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.* "[P]urposeful availment" asks whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802). By contrast, "[i]n tort cases, [courts] typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672–73 (9th Cir. 2012) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). The plaintiff bears the burden of satisfying the first two prongs and then the burden shifts to the defendant to make a "compelling case" that the third part has not been met. *Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted).

### 1. Purposeful Direction

The purposeful direction test applies here, as Plaintiff's trademark claims sound in tort. *See, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit). The "purposeful direction" or "effects" test is based on *Calder v. Jones*, 465 U.S. 783 (1984). It requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (internal quotation marks omitted).

### a.      Intentional Act

"'Intentional act' has a specialized meaning in the context of the *Calder* effects test." *Washington Shoe*, 704 F.3d at 673 (quoting *Schwarzenegger*, 374 F.3d at 806). An intentional act is an "external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Id.* at 674. Plaintiff alleges that Defendant manufactured, sold, and shipped gis bearing Plaintiff's K/M trademarks. Compl. ¶ 39. These alleged sales constitute intentional acts under the *Calder* effects test. *See Washington Shoe*, 704 F.3d at 674.

### b.      Expressly Aimed

The Ninth Circuit has rejected "the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). There must be "something more," *see Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998), which the Ninth Circuit has held to be "what the Supreme Court described as 'express aiming' at the forum state," *see Bancroft & Masters*, 223 F.3d at 1087. The Ninth Circuit has "repeatedly stated that the 'express aiming' requirement is satisfied, and specific jurisdiction exists, 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Washington Shoe*, 704 F.3d at 675 (quoting *Dole Food Co. v. Watts*, 303

F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks and citation omitted); *see also Bancroft & Masters*, 223 F.3d at 1087 ("'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident.").

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807 (clarifying that *Calder* did not involve "untargeted negligence," but "intentional acts" with "known impact"). Where a tort is "intentional," the Ninth Circuit has "found jurisdiction in the plaintiff's home forum," even though the directions of the intentional act and the known impact diverged, because "in such cases the 'acts are performed for the very purpose of having their consequences felt in the forum state.'" *Id.* at 675–76 (quoting *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)). "[T]he respective directions of the intentional act and the known impact need not coincide for the 'express aiming' requirement to be satisfied." *Id.* This is particularly salient with respect to claims of infringement of intellectual property rights. *See Washington Shoe*, 704 F.3d at 675; *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015) (citing and collecting cases where courts have held that "specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state" (internal citation omitted)). "[W]here a defendant *knows*—as opposed to being able to foresee—that an intentional act will impact another state, the 'expressly aimed' requirement is satisfied." *Washington Shoe*, 704 F.3d at 677.

Defendant argues that its acts were aimed at the Brazilian market, rather than California, and that Plaintiff fails to demonstrate more than "possible foreseeable effects" in California as a result of Defendant's alleged infringement. *See* ECF No. 11-1 at 9–11. However, the direction of Defendant's intentional acts, which Defendant contends were aimed at Brazil, does not need to coincide with the direction of the known impact of Defendant's acts. *See Washington Shoe*, 704 F.3d at 675.

Defendant cites to *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) and *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004), to contend that this Court lacks jurisdiction over Defendant. Both cases are distinct from the instant case. In *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (9th Cir. 2012), the Ninth Circuit concluded that specific jurisdiction over the defendant in Washington was proper where the defendant, an Arkansas retailer, sold shoes that infringed a Washington shoe manufacturer's copyright. 703 F.3d at 679. Although the defendant operated solely in Arkansas, and no part of the alleged infringement occurred in Washington, there was a prior business relationship between the defendant and Washington Shoe, and the defendant was aware that Washington Shoe owned the copyright to the shoes at issue. *Id.* at 671–75. Because the defendant had "actual awareness of its infringing activity," the Ninth Circuit concluded that the defendant had "expressly aimed" its conduct at Washington. *Id.* at 675–79. The Ninth Circuit distinguished its decision in *Washington Shoe* from its decisions in *Schwarzenegger* and *Pebble Beach* based on the defendant's "[k]nowledge that an intentional act will have an impact in another state."[4] *Id.* at 677. In *Schwarzenegger*, "the facts did not establish that

---

[4] In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court held that a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 134 S. Ct. at 1122 (emphasis added). The plaintiffs, residents of Nevada, filed a *Bivens* action in Nevada against a Drug Enforcement Administration agent for violating their Fourth Amendment rights by, *inter alia*, seizing cash from plaintiffs at a Georgia airport during their return trip to Nevada and subsequently filing a false affidavit. *See id.* at 1119–20. The Supreme Court concluded that personal jurisdiction over the defendant was improper in Nevada, because the mere fact that the defendant's conduct affected Nevada residents did not connect defendant to the forum "in a meaningful way." *Id.* at 1125–26. The Court emphasized that it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

*Walden* is factually distinguishable from cases alleging intentional trademark and copyright infringement. The Ninth Circuit has made clear that specific jurisdiction in the trademark and copyright context hinges not on the mere fact of a plaintiff's injury in the forum, but on a defendant's *knowledge* that an intentional act of infringement will impact residents of the forum state. *See Washington Shoe*,

[the defendant] *knew* that the impact of his intentional act would be felt in California." *Id.* (emphasis in original).  Similarly, in *Pebble Beach*, there were no "facts establishing knowledge that there would be an impact in California." *Id.* at 677–78.

Here, Plaintiff sufficiently alleges that Defendant had knowledge that its acts of infringement would have an impact in Plaintiff's home forum.  Given Defendant's months-long exploration of a joint venture opportunity with Plaintiff, plus Defendant's prior lawsuit against Plaintiff in San Diego Superior Court, Defendant knew that Plaintiff's principal place of business is in California.  *See* Munduruca Decl. ¶¶ 5–8; Currey Decl. ¶ 2–3.  Moreover, Plaintiff alleges that Defendant knew Plaintiff owned the K/M trademarks at all relevant times and intentionally infringed Plaintiff's trademarks. *See* Compl. ¶¶ 45, 68.  Defendant offers testimony that corroborates these allegations—Defendant provides an affidavit acknowledging that the gis Defendant contracted to sell abroad bore Plaintiff's K/M trademarks and were from the same stockpile that resulted from the parties' unrealized joint venture.  Currey Decl. ¶¶ 5–7.  Accordingly, Plaintiff makes a prima facie showing that Defendant intentionally infringed Plaintiff's trademarks, knowing that Plaintiff is a resident of California and that the impact of infringement would be felt in California.  This showing satisfies the "expressly aimed" requirement. *See Washington Shoe*, 704 F.3d at 675–76; *Adobe Sys.*, 125 F. Supp. 3d at 962.

Defendant argues that the mere fact of shipping allegedly infringing products to California prior to shipping them to Brazil cannot establish specific jurisdiction. *See* ECF No. 17 at 5–6.  However, Defendant's suit-related contacts with this forum are not

---

704 F.3d at 676–77.  Moreover, in the instant case, Fighter's Market is not the only link between Defendant and the forum.  Rather, Defendant's intentional conduct supplies its contacts with the forum: Defendant allegedly attempted to form a business relationship with Plaintiff, manufactured a stockpile of gis bearing Plaintiff's trademarks as a result of the attempted joint venture, negotiated contracts to sell some of those infringing gis abroad, and shipped the gis to California before shipping them to Brazil.  Here, Defendant's intentional conduct "connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

limited to Defendant's alleged shipment of K/M gis via California. Plaintiff's claim of personal jurisdiction does not turn on Defendant's alleged shipment of K/M gis to a warehouse in California. *See Adobe Sys.*, 125 F. Supp. at 962 (rejecting defendant's argument that specific jurisdiction was improper where Adobe did not allege that defendant transacted any business in California, concluding that defendant "expressly aimed" at California by willfully infringing Adobe's copyrights and trademarks with knowledge that Adobe is a resident of California). Here, Plaintiff has established a prima facie case that Defendant intentionally infringed Plaintiff's trademarks, knowing that Plaintiff is a resident of this forum. *See id.*

**c.     Causing Harm that the Defendant Knows Is Likely to Be Suffered in the Forum State**

"It is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the [rights] holder has its principal place of business." *Washington Shoe*, 704 F.3d at 679; *see also Adobe Sys.*, 125 F. Supp. 3d at 963 (stating the same); *c.f. Mavrix Photo*, 647 F.3d at 1231 ("The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable."). Plaintiff alleges that Defendant's alleged infringement has diluted Plaintiff's trademarks, reduced Plaintiff's revenue, and diminished Plaintiff's goodwill, among other injuries. *See, e.g.*, Compl. ¶¶ 44, 46, 69, 74–75, 78. Defendant knew at the time it allegedly infringed Plaintiff's trademarks that Plaintiff holds rights to the K/M trademarks. *See* Compl. ¶ 45. Defendant also knew that Plaintiff's principal place of business is in California, as Defendant engaged in business negotiations with Plaintiff and formerly sued Plaintiff in California. *See* Currey Decl. ¶¶ 2–3; Munduruca Decl. ¶¶ 5, 8. Under Ninth Circuit precedent, Defendant knew or should have known that the impact of its infringement would cause harm likely to be suffered in California. *See Washington Shoe*, 704 F.3d at 679. Thus, the third prong of the effects test is met. *See Mavrix Photo*, 647 F.3d at 1228.

Defendant argues that Plaintiff cannot establish *Calder*'s third prong because Plaintiff does not own the K/M trademarks in Brazil, and because United States

trademark law does not govern use of trademarks extraterritorially. *See* ECF No. 11-1 at 11–12. Defendant's argument is inapposite. It is settled law that Congress intended the Lanham Act to apply extraterritorially. *Trader Joe's Co. v. Hallatt*, No. 14-35035, 2016 WL 4488009, at *3 (9th Cir. Aug. 26, 2016) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952)). Whether the Lanham Act applies to Defendant's alleged extraterritorial conduct in this case is a question not currently before this Court. The scope of "the extraterritorial reach of the Lanham Act is a merits question that does not implicate federal courts' subject-matter jurisdiction" and turns on the three-part test articulated in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976). *Id.* at *5–11 (applying *Timberlane* test). Because Defendant's motion seeks to dismiss Plaintiff's claims for lack of personal jurisdiction, the Court does not reach the question of whether the Lanham Act covers Defendant's alleged extraterritorial conduct.

**2.     Arising Out Of**

The Ninth Circuit adopted the "but for" test to determine the "arising out of" requirement. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990) (internal citation omitted). "The Ninth Circuit has recognized that, in trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Adobe Sys.*, 125 F. Supp. 3d at 963.

Defendant cites to *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002) to argue that the "but for" test is not met. *Glencore Grain* is distinguishable. The plaintiff in *Glencore Grain* filed in California federal court an application for an order confirming an arbitration award that it had obtained against the defendant in England. *See id.* at 1118–89. The dispute between the parties arose out of contracts that were negotiated abroad, involved foreign companies, and required performance in India. *See id.* at 1123–24. Because the plaintiff's injuries arose out of extraterritorial conduct completely unrelated to California, the Ninth Circuit concluded

that the plaintiff's claim "d[id] not arise out of conduct directed at or related to California." *Id.*

Here, in the context of trademark infringement, Plaintiff alleges that it would not have been injured but for Defendant's infringing conduct. *See, e.g.*, Compl. ¶¶ 44, 46, 69, 74–75, 78. Accordingly, Plaintiff sufficiently alleges that its claim arises out of Defendant's forum-related activities. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (concluding that plaintiff would not have been injured but for defendant's registration of plaintiff's trademarks as his own domain names on the Internet, even though defendant's infringing acts occurred outside of the forum).

### 3. Reasonableness

Finally, as to whether the exercise of jurisdiction comports with fair play and substantial justice, if a defendant has purposefully directed its activities in California, then "personal jurisdiction is presumptively reasonable." *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990). The burden is on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Ninth Circuit considers seven factors to determine whether the exercise of jurisdiction is reasonable:

> (1) the extent of the [defendant's] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum.

*Panavision*, 141 F.3d at 1323. The court must balance all seven factors and not one is dispositive. *Id.*

/ / / /

### a. Purposeful Interjection

Defendant argues that this factor weighs against reasonableness because it did not expressly aim its acts at California. *See* ECF No. 11-1 at 13. As the Court has determined that Defendant expressly aimed its acts at California, the Court finds that the "purposeful interjection" factor does not weigh against the reasonableness of finding jurisdiction over Defendant. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection.")

### b. Defendant's Burden in Litigating

"[U]nless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)). While the mere fact that Defendant has litigated in California before will not subject it to personal jurisdiction, for purposes of assessing the burden on Defendant in litigating in this forum, the fact that Defendant pursued litigation in San Diego two years ago weighs against finding that the inconvenience to Defendant would be so great as to constitute a deprivation of due process. *See* Munduruca Decl. ¶ 8; Currey Decl. ¶ 3.

### c. Sovereignty

Defendant contends that this factor weighs against finding jurisdiction because Brazilian law governs this instant trademark dispute, and because it is a foreign corporation. *See* ECF No. 11-1 at 14. However, Defendant does not address how jurisdiction would pose a conflict with the sovereignty of Defendant's state of incorporation—the British Virgin Islands—or its principal place of business—Hong Kong. *See id.* Furthermore, courts have extended the Lanham Act to reach extraterritorial conduct. *See, e.g.*, *Trader Joe's*, 2016 WL 4488009, at *11. Whether the Lanham Act reaches Defendant's extraterritorial conduct is a merits question that is

currently not before this Court.  *See id.* at *3.  Defendant has not established that this factor weighs against the reasonableness of exercising jurisdiction over Defendant.

### d. Forum State's Interest

Defendant reiterates its assertions that the instant trademark dispute is governed by Brazilian law and argues that California's interest is minimal where the conduct in dispute took place abroad.  *See* ECF No. 11-1 at 14; ECF No. 17 at 7.  However, the Ninth Circuit has held that "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Panavision*, 141 F.3d at 1323 (quoting *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996)).  That tortious conduct which harms a forum state's residents occurred outside of the forum will not eliminate the forum state's interest in providing redress for its residents.  *See Washington Shoe*, 704 F.3d at 675–76 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) ("[S]tates have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents.")).   This factor weighs in favor of the reasonableness of exercising specific jurisdiction over Defendant.

### e. Efficient Resolution

"This factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323.  Defendant makes conclusory assertions that the majority of the witnesses and evidence are located in Hong Kong or Brazil.  *See* Currey Decl. ¶¶ 6–7.  Assuming Defendant's assertions were true, the Ninth Circuit has stated that this factor is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323.  This factor does not weigh against the reasonableness of exercising jurisdiction over Defendant; at minimum, this factor is neutral.

### f. Convenient and Effective Relief for Plaintiff

Although it will likely be inconvenient for Plaintiff to litigate in a forum outside of California, the Ninth Circuit has stated that "[i]n evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's

inconvenience." *Panavision*, 141 F.3d at 1324. This factor does not weigh in favor of exercising jurisdiction over Defendant in California; at most, this factor is neutral.

**g.  Alternative Forum**

Plaintiff has not established that an alternative forum is unavailable. However, "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988) (internal citation omitted). Here, Defendant has not carried its burden to show that the forum state is unreasonable. Accordingly, the existence of an alternative forum is not at issue.

In balancing the aforementioned factors outlined in *Panavision*, 141 F.3d at 1323, the Court concludes that Defendant fails to carry its burden to present a compelling case that exercising specific personal jurisdiction over Defendant would be unreasonable. *See Burger King*, 471 U.S. 462 at 477; *Schwarzenegger*, 374 F.3d at 802.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff sufficiently alleges that personal jurisdiction over Defendant in this forum state would be proper. Accordingly, the Court **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated:  September 14, 2016

Hon. Gonzalo P. Curiel
United States District Judge